## Chojnacki Estate No. 1

*J. S. Jiuliante* and *Peter G. Schaaf*, for Commonwealth.

*Arthur E. Ashton* and *W. Louis Schlesinger,* for Veterans Administration.

*Joseph S. Mackrell,* for guardian.

ROBERTS, P. J., March 20, 1958.—In this proceeding the Commonwealth seeks payment for the cost of care of an incompetent veteran as a patient in a State institution, for several years prior to the appointment of a guardian. During the period in question the veteran was and continues to be the beneficiary of a pension from the United States Government (now $78.75 monthly, formerly $66.15). The essential facts are not in dispute.

On May 6, 1957, after due hearing on petition of the Commonwealth, John S. Chojnacki was adjudged an incompetent and a guardian was appointed for his estate. The guardian's first and partial account, filed March 13, 1958, shows net assets in his hands of $5,111.62. The record establishes that all of the assets except $1,450 are directly traceable to his Federal veteran's pension. The Commonwealth's claim for the cost of care of the incompetent from December 19, 1950, to February 28, 1957, is $6,687.73, less $253.05 paid by the Veterans Administration directly to the State institution, from July, 1956, to January, 1957, leaving a balance claimed of $6,434.68.

The claim of the Commonwealth is based on the Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781, which provides: "Whenever any person is maintained as an inmate of any hospital, . . . or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance. . . ."

Section 701 of The Mental Health Act of June 12, 1951, P. L. 533, amended March 15, 1956, P. L. (1955) 1291, sec. 1, 50 PS §1361, provides: ". . . liability for all costs of care of any patient in any

State institution is hereby imposed, . . . against

"(1) The patient's real and personal property:".*

The prevailing Pennsylvania authorities, statutory and decisional, clearly accord to the Commonwealth the status of a creditor when it seeks to satisfy its claim for the cost of care of a patient in a State institution: Stoner Estate, 358 Pa. 252. This creditor-debtor relationship between the Commonwealth and the incompetent, for cost of care, is not altered by the recently enacted small estates sections of the Incompetents Estates Act (sections 201 and 202 of the Act of June 28, 1951, P. L. 612, and the Act of February 28, 1956, P. L. (1955) 1154, as amended) which authorizes distribution of real and personal property (now of gross value of $2,500 or less, formerly $1,500 and $1,000) by "the person or institution maintaining the incompetent without the appointment of a guardian or the entry of security, . . .".

The Veterans Administration filed an answer opposing payment of the claim and averred that the provisions of the World War Veterans' Act "exempts the assets in the guardianship estate from the claim of the Commonwealth of Pennsylvania as a creditor". The act provides inter alia: "Payments of benefits . . . made to, or on account of, a beneficiary . . . shall be exempt from the claims of creditors . . . before or after receipt by the beneficiary. Such provision shall not attach to claims of the United States arising under such laws . . .": 38 U.S.C. §454a.

It is conceded that payments for the care of the incompetent veteran, from the date of appointment of

---

*See also section 6 of Act of June 1, 1915, P. L. 661, 71 PS §1786, which provides: "All claims by the Commonwealth for maintenance, as herein provided, in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors."

his guardian, may be made from pension benefits received on his behalf. The controversy here involves payment to the Commonwealth for the cost of the veteran's care prior to the appointment of his guardian. Is the Commonwealth a creditor within the meaning of the Act of Congress, and as such, barred from enforcing payment out of the assets derived from pensions, for the cost of care which it furnished to the incompetent veteran prior to the appointment of a guardian? This question has not been decided by our appellate courts. Some lower court decisions have sustained the right of the Commonwealth to reimbursement in the situation we are reviewing: Lulis Estate (No. 1) 77 D. & C. 118; Matter of Grega, 7 D. & C. 2d 753. Others have denied such reimbursement to the Commonwealth: In re Bones Estate, 34 Dauph. 385; Brusbard's Estate, 34 D. & C. 107; In re Musser, 19 D. & C. 526; Szakovics Estate, 1 D. & C. 2d 77.

Counsel for the Veterans Administration contend that the Commonwealth in seeking payment for care, prior to the appointment of the guardian, is a creditor, and since section 454a exempts Federal payments to the veteran from the "claims of creditors," the Commonwealth may not be reimbursed from the incompetent veteran's estate. It is the Commonwealth's position that in caring for the veteran it makes available to him benefits intended for him by the employment of his pension and for the accomplishment of which the exemption was designed. The Commonwealth therefore contends that in seeking payment for its cost of such service it is not a creditor within the meaning of the Act of Congress and the statutory exemption does not preclude reimbursement to it from the pension accumulation.

To sustain the Commonwealth's position requires that we construe the words "claims of creditors" as

inapplicable to the Commonwealth when seeking repayment for its cost of care of the veteran. Similarly, if the veteran had been maintained by a person, institution or local governmental agency, we would be required to hold that "claims of creditors" does not include such claimant. We find nothing in the act which suggests that such a limited meaning was intended for the word "creditor" and we are without authority to give it such meaning. If it was the legislative intention to exclude from the protective mandate of the act, claims for care and maintenance of the veteran, by State or private service, the Congress would have so provided just as it did in excepting from the operation of the protective provision certain specified claims of the United States. This exception we may not, by construction, enlarge to include the Commonwealth or other claimants who by providing care and maintenance for the veteran make essential contributions to his welfare. The power to modify or change the exempt status granted pension funds is not with this court.

We are clearly of the opinion that funds derived from Federal pension payments constitute a distinct kind of property created with an exemption, which completely protects such funds during the lifetime of the veteran from the claims of all creditors, State or otherwise, except claims of the United States specified in the act.

The claim of the Commonwealth for its cost of care of the incompetent prior to the appointment of the guardian may not, therefore, be paid out of funds in the hands of the guardian derived from pension benefits. The guardian does, however, have $1,450 not traceable to pension benefits. From this nonexempt asset of the incompetent-pensioner, the Commonwealth, as a creditor, may seek to satisfy its claim for cost of care prior to the appointment of a guardian. Thus at

this time the Commonwealth will receive only a small portion of its claim. This result need not necessarily have occurred. Had the Commonwealth acted earlier to have a guardian appointed, when it first learned that its patient was receiving pension benefits, instead of waiting until May, 1957, the Commonwealth would have received payments during that period and would not now be in the position of a creditor with an accrued claim for past care covering several years and presently not recoverable. The Commonwealth's opportunity for satisfaction of the unpaid portion of its claim may not be entirely lost. Payment from the pension accumulation may be merely deferred to such time as the statutory exemption, which prevails only during the veteran's lifetime, is no longer applicable. This, of course, becomes a matter for future determination.

Accordingly, for the present, we enter the following

## Order

And now, to wit, March 20, 1958, it is ordered, adjudged and decreed:

1. The petition of the Commonwealth of Pennsylvania for an order directing the guardian to reimburse the Commonwealth in the amount of $6,434.68, for the cost of care of John S. Chojnacki from December 19, 1950, to February 28, 1957, is refused as to those funds which have been obtained as Federal pensions.

2. The petition of the Commonwealth is granted as to funds in the hands of the guardian which were not obtained as Federal pensions, and from such funds the guardian is directed to pay to the Commonwealth, on its said claim, for care prior to May 6, 1957, the sum of $1,450.

3. The costs of this proceeding shall be charged against the incompetent's estate.